**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

PAMELA SALVAGGIO, o/b/o
DJS, a minor,

     *Plaintiff*,

v.

COMMISSIONER OF
SOCIAL SECURITY,

     *Defendant*.
_____/

CASE NO. 09-10530

DISTRICT JUDGE DAVID M. LAWSON
MAGISTRATE JUDGE CHARLES BINDER

**OPINION AND ORDER**
**ON CROSS MOTIONS FOR SUMMARY JUDGMENT**[1]

**I.   OPINION**

  **A.   Introduction and Procedural History**

Pursuant to an Order of Reference from United States District Judge David M. Lawson made under 28 U.S.C. § 636(c) (Doc. 13), and by consent of the parties, as evidenced by the signatures of their counsel to a Consent to the Exercise of Jurisdiction by United States Magistrate Judge (Doc. 12.), this social security benefits appeal is ready for consideration. Upon review, I conclude that pursuant to E.D. Mich. LR 7.1(e)(2), this matter is ready for decision without oral argument.

In March 2006, Pamella Salvaggio, acting as next friend, filed the instant claim for Supplemental Security Income (SSI) benefits on behalf of her son (hereinafter "DJS"). At the time

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E. D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation is issued only to address the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

of the administrative hearing, DJS, who was born in 1996, was 11 years of age and had completed the fifth grade. (Transcript, Doc. 9 at 47-50, 312.) The claim was denied at the initial administrative stages. (Tr. at 42-46.) On July 9, 2008, Plaintiff appeared before an Administrative Law Judge (ALJ), who considered the case *de novo*. In a decision dated November 3, 2008, the ALJ found that DJS was not disabled. (Tr. at 10-25.) Plaintiff requested a review of this decision on May 15, 2006. (Tr. at 9.)

The ALJ's decision became the final decision of the Commissioner on December 23, 2008, when the Appeals Council denied Plaintiff's request for review. (Tr. at 5-7.) On February 12, 2009, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.     Standard of Review**

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (per curiam). The Commissioner is charged with finding the facts relevant to an application for disability benefits. A federal court "may not try the case *de novo*. . . ." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

If supported by substantial evidence, the Commissioner's decision is conclusive, regardless of whether the court would resolve disputed issues of fact differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990), and even if substantial evidence would also have supported a finding other than that made by the ALJ. *Mullen v. Bowen*, 800 F.2d 535, 545

2

(6th Cir. 1986) (en banc). The scope of the court's review is limited to an examination of the record only. *Brainard,* 889 F.2d at 681. "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 681 (citing *Consolidated Edison Co. v. NLFB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 2d 126 (1938)). The substantial evidence standard "'presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference from the courts.'" *Mullen*, 800 F.2d at 545 (quoting *Baker v. Heckler*, 730 F.2d 1147, 1149 (8th Cir. 1984)) (affirming the ALJ's decision to deny benefits because, despite ambiguity in the record, substantial evidence supported the ALJ's conclusion).

The administrative law judge, upon whom the Commissioner and the reviewing court rely for fact finding, need not respond in his or her decision to every item raised, but need only write to support his or her decision. *Newton v. Sec'y of Health & Human Servs.*, No. 91-6474, 1992 WL 162557 (6th Cir. July 13, 1992). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) ("a written evaluation of every piece of testimony and submitted evidence is not required"); *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987) (ALJ need only articulate his rationale sufficiently to allow meaningful review). Significantly, under this standard, a reviewing court is not to resolve conflicts in the evidence and may not decide questions of credibility. *Garner,* 745 F.2d at 387-88.

**C.     Governing Law**

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen*, 800 F.2d at 537.

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). "[B]enefits are available only to those individuals who can establish 'disability' within the terms of the Social Security Act." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). One is thus under a disability "only if his physical or mental . . . impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

A child will be considered disabled if he or she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations." 42 U.S.C. §

1382c(a)(3)(C)(i). To determine whether a child's impairment results in marked and severe limitations, SSA regulations[2] prescribe a three-step sequential evaluation process:

1. If a child is doing substantial gainful activity, the child is not disabled and the claim will not be reviewed further.

2. If a child is not doing substantial gainful activity, the child's physical or mental impairments will be considered to see if an impairment or combination of impairments is severe. If the child's impairments are not severe, the child is not disabled and the claim will not be reviewed further.

3. If the child's impairments are severe, the child's impairment(s) will be reviewed to determine if they meet, medically equal or functionally equal the listings. If the child has such an impairment and it meets the duration requirement, the child will be considered disabled. If the child does not have such impairment(s), or if the duration requirement is not met, the child is not disabled.

20 C.F.R. § 416.924(a).

In the third step of this analysis – namely, whether a child's impairment(s) functionally equals the listings – the Commissioner assesses the functional limitations caused by the child's impairment(s). 20 C.F.R. § 416.926a(a). The regulations direct the Commissioner to evaluate how the child functions in six domains, which are "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). These domains are:

1. Acquiring and using information;

2. Attending and completing tasks;

3. Interacting and relating with others;

4. Moving about and manipulating objects;

5. Caring for yourself; and

6. Health and physical well being.

---

[2] For a history of these regulations, see *Molina v. Barnhart,* No. 00-CIV-9522(DC), 2002 WL 377529 (S.D.N.Y. March 11, 2002).

5

*Id.*

At issue in this case are the first three domains. As to the first, the regulations state that the Commissioner must consider how well the child acquires or learns information and how well that information is used. Claimants with limitations in this domain may misunderstand words about space, size, or time; have difficulty rhyming words or the sounds in words; have difficulty recalling important things learned in school the previous day; have difficulty solving mathematics questions or computing arithmetic answers; or speak only in short, simple sentences with difficulty explaining what is meant. 20 C.F.R. § 416.926a(g)(3).

Among school-age children (ages 6 to 12), a child should be able to focus attention to follow directions in various situations, remember and organize school materials, and complete classroom and homework assignments. 20 C.F.R. § 416.926a(h)(2)(iv). The child should also be able to concentrate on details, avoid careless mistakes in his or her work (beyond what would be expected among unimpaired peers), be able to change activities or routines without distracting him or herself or others, and stay on task when appropriate. *Id.* He or she should be able to sustain attention well enough to participate in group sports, read alone, and complete family chores. *Id*. Finally, he or she should also be able to complete a transition task – such as being ready for the school bus, changing clothes after gym, or changing classrooms – without extra reminders and accommodation. *Id.*

As to the second domain – attending and completing tasks – the regulations state that the Commissioner considers how well the child is able to focus and maintain attention; initiate, carry through and complete activities; and the pace and ease with which activities are completed. Claimants with limitations in this domain are easily startled or over-reactive, slow to focus on or fail to complete activities of interest, become easily sidetracked, frequently interrupt others,

6

become easily frustrated and give up on tasks, including those they are capable of completing, and require extra supervision to keep engaged. 20 C.F.R. § 416.926a(h)(3). In connection with this domain, school-age children should, among other things, be able to focus attention sufficiently to follow directions, remember and organize school materials, and complete classroom and homework assignments. 20 C.F.R. § 416.926a(h)(2)(iv).

The domain of interacting and relating with others involves how well the child initiates and sustains emotional connections with others, develops and uses the community's language, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. 20 C.F.R. § 416.926a(i).

If the child's impairments result in "marked" limitations in two domains, or an "extreme" limitation in one domain, the impairment functionally equals the listing and the child will be found disabled. 20 C.F.R. § 416.926a(d). A marked limitation is one that "interferes seriously with [a child's] ability to independently initiate, sustain or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An extreme limitation is one that "interferes *very* seriously with [a child's] ability to independently initiate, sustain or complete activities." 20 C.F.R. § 416.926a(e)(3)(i) (italics added). "Marked" and "extreme" limitations in a given domain can be established by standardized test scores. A "marked" limitation is shown by a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and the child's day-to-day functioning in domain-related activities is consistent with that score. An "extreme" limitation is shown by a valid score that is three standard deviations or more below the mean on a comprehensive standardized test designed to measure ability or functioning in that domain, and the child's day-to-day functioning in domain related activities is consistent with that score. 20

7

C.F.R. §§ 416.926a(e)(2)(iii), 416.926a(e)(3)(iii). The Commissioner does not consider test scores alone to be conclusive, and the bulk of 20 C.F.R. § 416.926a is devoted to "general descriptions of each domain" against which a claimant's functioning may be compared.

### D.   ALJ's Findings

The ALJ applied the Commissioner's child disability analysis to Plaintiff's claim and found that Plaintiff had not engaged in substantial gainful activity. (Tr. at 16.) At step two, the ALJ found that Plaintiff's impairments were "severe." (*Id.*) At step three, the ALJ found that Plaintiff's combination of impairments did not meet or equal the listings in the regulations. (*Id.*) More specifically, the ALJ found that Plaintiff did not exhibit an "extreme" limitation in any of the six domains, nor "marked" limitation in any two domains of functioning, concluding that Plaintiff had a "less than marked" limitation in acquiring and using information, attending and completing tasks, and interacting with others. (Tr. at 20-22.) The ALJ found either "less than marked" or "no limitation" in the remaining domains. (Tr. 23-25.)

### E.   Analysis and Conclusions

#### 1.   Legal Standards

After review of the record, I suggest that the ALJ utilized the proper legal standard in his analysis of Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

#### 2.   Substantial Evidence

In this circuit, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite

conclusion. *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

The administrative record in this case indicates that during his first grade year, DJS's teacher reported that he "made gains in all areas of the language program, however his gains were not as great as I would liked to have seen." (Tr. at 205.)

In an Individualized Education Program (IEP) Team Report prepared in January 2006, DJS was described as "very sweet and very enthusiastic. He is excited about activities ("this is fun!") and he does work very hard when something is difficult." (Tr. at 172.) The report goes on to state that DJS "has been struggling with the third grade curriculum although with accommodations he has been earning B and C grades." (*Id.*) His reading skills were considered weak. (*Id.*) His performance was considered "low average[.]" (Tr. at 173.) DJS was "able to express thoughts and write in simple sentences. Letter/sound associations are weak but present in his writing." (*Id.*) Social and emotional behavior was described as "age appropriate peer and adult relationships." He was described as "very easy-going and polite; has had occasional conflicts with a few students but no significant concerns." (*Id.*) Hearing acuity was found to be within normal limits. (*Id.*) Although written expression was considered "significantly below average," DJS was reported able to "write sentences using correct grammar and punctuation." (Tr. at 175.)

A Physician Progress Note completed at the Pioneer Counseling Center in June 2006 indicated that DJS was "doing much better since dosage adjusted[.]" (Tr. at 211; *see also* 212.)

In a Teacher Questionnaire completed by DJS's second grade teacher in June 2006, it was reported that, as to acquiring and using information, DJS was "very bright but has difficulty processing multiple oral instructions. His reading [and] writing abilities are low although he has been making progress since starting in the resource room this winter. He does well when telling

9

stories . . . orally." (Tr. at 230.) She noted that he required help with spelling and reading. For the most part, she noted that DJS had "a slight problem" in the activities of this domain. (*Id.*) As to attending and completing tasks, she reported that he was "often distracted when doing work but will stay focused when working one-on-one or in a small group [with] a teacher[.]" (Tr. at 231.) Most of the areas of this domain were rated as "no problem" or "a slight problem." (*Id.*) No difficulties were found by the teacher in any of the other domains. (Tr. at 232-34.) She concluded her report by stating that DJS "has made a great deal of progress this year, although he is still [approximately] one grade level behind." (Tr. at 236.)

In July 2006, DJS underwent a psychological assessment at Sierra Medical Group, which was conducted at the request of the Disability Determination Service. Full scale IQ testing placed DJS in the "low average" range. (Tr. at 240.) The examiner reported that DJS had the ability to "understand the world around him." (*Id.*) DJS was reported to have "put forth a very good effort." (Tr. at 241.) Although anxious, he was characterized as polite. (*Id.*)

In a report prepared in December 2006, DJS's teacher reported that he "has made progress in second grade intervention program, but reading/language arts skills are still significantly below grade level expectation. Irregular attendance has been a major concern." (Tr. at 192.) Summer school attendance was recommended. (*Id.*) The teacher reported that DJS "usually tries to do well. He is usually very cooperative and tries to do the work asked to do. His lack of reading really holds him back." (Tr. at 197.)

In an IEP Team Report prepared in late November 2007 during DJS's fifth-grade year, it was reported that he was "more on task in the regular classroom than in the beginning of the year. He has difficulty following the directions and understanding what is expected so will need the cooperation of home and school to keep [him] on track with his assignments." (Tr. at 249.)

However, it also was also reported that his "reading, math and writing skills have increased according to the current goals." (*Id.*) As to academic achievement, reading comprehension was rated at the middle of a third grade level and word identification at the middle of a second grade level. (Tr. at 250.) Math calculation skills were at the middle of a fourth grade level with "problem solving skills being stronger than the calculation at middle fifth." (*Id.*) As to communication skills, the report states that DJS "has made nice gains in auditory processing skills; however, he still needs to work on increasing understanding of abstract semantic relationships and language. (*Id.*) "Age appropriate peer and adult relationships" were reported and DJS was described as "very easy-going and polite." (*Id.*) In a summary of achievement test results, it was stated that DJS's "ability to apply academic skills is within the average range of others at his age level. His academic skills are low average." (Tr. at 259.)

In May 2008, still during his fifth grade year, three of DJS's teachers completed Teacher Questionnaires. As to the first domain, all three noted that he needed additional help in class (Tr. at 264, 272, 280) and two of them rated his problems in this area as "slight." (Tr. at 272, 280.) As to the second domain, they reported that he worked slowly and had difficulty working independently. (Tr. at 265, 273, 281.) Areas of this domain were rated for the most part as "slight" or "obvious" problems, although one teacher rated some areas as "very serious" problems. (*Id.*) As to the third domain, one teacher observed no problems. (Tr. at 266.) Two other teachers noted that DJS had been removed from Safety Patrol due inappropriate language and behavior. (Tr. at 274, 282.) Areas of this domain were rated as "slight" or "obvious." (*Id.*) No "serious" or "very serious" problems were observed in this domain by the teachers.

11

### 3.    Conclusions

Although there is evidence to the contrary (*see* Tr. at 210, 294-305), after review of the administrative record, I conclude that the evidence summarized above constitutes substantial evidence supporting the ALJ's findings that DJS had "less than marked" limitations in all the domains here at issue. Although the record shows that DJS found school a challenge, his school records, particularly the IEP reports and Teacher Questionnaires, show progress. Although his academic achievement was behind that of his peers, neither his test scores nor his reported behavior justify a finding of "marked" or "extreme" impairments in any of the domains at issue. The findings of school testing, which consistently rated DJS at the "average" or "low average" levels, also fail to support Plaintiff's contentions. Counsel for Plaintiff points to the psychological evaluation conducted by Dr. Czarnecki. (Tr. at 294-300.) However, I conclude that the ALJ properly discounted the findings recited in that report, correctly noting that the report was prepared for the explicit purpose of seeking to qualify DJS for benefits. (Tr. at 292.) Moreover, the report itself makes clear that in preparing his evaluation, Dr. Czarnecki used as a reference an appeal brief filed on behalf of Plaintiff.

Therefore, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Mullen*, 800 F.2d at 545, as the decision is supported by substantial evidence.

12

**II.	ORDER**

Accordingly, **IT IS ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**, that Plaintiff's Motion for Summary Judgment is **DENIED**, and the findings of the Commissioner are **AFFIRMED**.

**III.	REVIEW**

Review of this Order is governed by 28 U.S.C. § 636(c)(3).

                                              s/ *Charles E Binder*
                                              CHARLES E. BINDER
Dated: November 5, 2009                   United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: November 5, 2009                           By    s/Patricia T. Morris
                                                               Law Clerk to Magistrate Judge Binder